IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ASKINS & MILLER ORTHOPAEDICS, P.A., ROLAND V. ASKINS III, AND PHILIP H. ASKINS,<br><br>    Defendants. | Case No.: 8:17-cv-00092-JDW-MAP |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COME NOW Defendants ASKINS & MILLER ORTHOPAEDICS, P.A., ROLAND V. ASKINS III, and PHILIP H. ASKINS (collectively, "Defendants ASKINS") and file this their Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction.

Plaintiff United States of America (the "Government" or "IRS") asks this Court to issue a preliminary injunction against Defendants ASKINS requiring that they, among other things, pay their taxes. The IRS asserts that the Court has the authority to do so under 26 U.S.C. § 7402(a)—a statute historically used only in extraordinary circumstances to preclude novel attempts aimed at undermining the enforcement of the internal revenue laws or to prohibit tax preparers from defrauding the government or advising others to do so by promoting abusive or fraudulent tax schemes. Such is not the case here. For the reasons explained below, an injunction issued either in lieu of or in addition to the collection remedies otherwise available to the IRS, which injunction orders taxpayers to comply with existing law and pay taxes is not

1

"necessary or appropriate for the enforcement of the internal revenue laws." The Government's motion should be denied.

## I. LEGAL STANDARD

"[T]he decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy." *U.S. v. Ernst & Whinney*, 35 F.2d 1296, 1301 (11th Cir. 1984). To obtain a preliminary injunction, "the United States must show that the injunction is necessary or appropriate for the enforcement of the internal revenue laws and that the following four factors weigh in favor of granting a preliminary injunction against [Defendants]: (1) there is a likelihood of irreparable injury to the United States; (2) there is a likelihood of little harm to [Defendants] if the temporary injunctive relief is granted; (3) there is a likelihood that the United States will ultimately prevail; and (4) an injunction will serve the public interest." *United States v. Farnell*, 91 A.F.T.R.2d 2003-754 (M.D. Fla. 2003), *supplemented and amended by* 91 A.F.T.R.2d 2003-1356 (M.D. Fla. 2003). Significantly, with respect to the third factor—the likelihood of success on the merits—the Government must show that it will ultimately meet the standard for entry of a permanent injunction. That standard is similar to the standard for a preliminary injunction, but it also requires a showing that the remedies available at law, such as monetary damages, are inadequate compensation for the Government's alleged irreparable injury. *U.S. v. Stinson*, 239 F. Supp. 3d 1299 (M.D. Fla. 2017), *motion for relief from judgment granted*, 119 A.F.T.R.2d 2017-1929 (M.D. Fla. 2017). As explained below, the Government cannot meet this standard.

In additional support of their position, the Defendants ASKINS attach hereto as "Exhibit A" the Declaration of Philip H. Askins.

2

## II.     ARGUMENT

**A. An Injunction Under § 7402(a) is Neither Necessary Nor Appropriate in this Circumstance.**

In this action, the Government seeks to employ 26 U.S.C. § 7402(a) as justification for this Court to issue a mandatory injunction against ordinary taxpayers to require the payment of employment taxes.  Indeed, § 7402(a) does broadly provide that "district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction…as may be necessary or appropriate for the enforcement of the internal revenue laws."  The Government now claims that this statute justifies the extraordinary use of injunctive relief in otherwise unremarkable cases such as this where a business has failed to deposit and pay its employment taxes.  This assertion is, at best, disingenuous.  Despite its breadth, use of § 7402(a) has traditionally been confined to addressing novel attempts to defeat the internal revenue laws that are outside the scope of the broad panoply of remedies typically available to the IRS.  There is no established precedent for allowing the IRS to seek injunctions selectively against taxpayers as a routine collection tool.

For instance, one of the cases upon which the Government relies is *United States v. Ernst & Whinney*, 735 F.2d at 1298. Ernst & Whinney was engaged in providing tax-related services in which they "systematically develop[ed] misleading terminology for items not subject to the [investment] tax credit so as to improperly claim them as 'qualifying property' within the statute." 735 F.2d at 1298. The IRS sought to enjoin Ernst & Whinney from "(1) promoting its investment tax credit service; (2) advising clients to use deceptive terminology to claim a credit for property not clearly eligible; (3) creating misleading audit documentation in support of the bogus claims; and (4) hindering IRS attempts to discovery the identities of the taxpayers who [used its service]." *Id*.  The court appropriately tailored injunctive relief to preclude the unlawful

3

evasion of the Internal Revenue laws that was resulting from the defendants' misconduct. The Eleventh Circuit in *Ernst & Whinney,* however, hardly endorsed the use of § 7402(a) to justify a mandatory injunction in an effort to compel an otherwise commonplace taxpayer to pay taxes for which the taxpayer had otherwise filed returns disclosing the extent of its tax liability and cooperated with the IRS.

The handful of cases upon which the Government relies where it did obtain an injunction in aid of collection were all virtually uncontested. None appear to have resulted from considered proceedings in which courts entered an injunction following fully considered adversary hearings or briefings by the parties. For example, cases the Government cites include: *U.S. v. Barragan*, No. 5:16-cv-00307-MW-GRJ, 2017 WL 1948050 (N.D. Fla. Apr. 21, 2017) (injunction entered after defendants' default); *U.S. v. Copper Chimney, Inc.*, No. 16-22039-DPG, 2016 WL 6108125 (S.D. Fla. Aug. 4, 2016) (injunction entered on joint motion by IRS and defendant taxpayers for stipulated order of permanent injunction); *U.S. v. Duffey's Cabinet Shop, Inc.*, No. 1:13-CV-01262-AT, 2013 WL 7019294 (N.D. Ga. Sept. 25, 2013) (entering consent judgment and permanent injunction); *U.S. v. Leonard*, No. 1:13-CV-0970, 2013 WL 7019207 (N.D. Ga. July 5, 2013) (injunction entered after defendants' default). None of the taxpayers in these cases appear to have attempted to raise objections of any sort to the extraordinary relief sought by the IRS. No assurance therefore exists that the courts in those cases considered the propriety of the IRS's request before entering an injunction.

An independent search by undersigned counsel for Defendants ASKINS yielded another two cases similar to those cited by the Government. Both those cases also lacked taxpayer opposition to the Government's request for an injunction. *U.S. v. Vegetable Medley-Chavis Bar-B-Que*, No. 3:15-cv-166-TLW, 117 AFTR 2d 2016-2033 (D.S.C. June 2, 2016) (injunction

4

entered after defendants' default); *U.S. v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530 (E.D. Pa. 2016) (granting government's third motion to hold defendant in contempt and to modify scope of permanent injunction that had been entered with consent of taxpayers); *cf. Fifty Below Sales & Marketing, Inc. v. U.S.*, No. 05-1380 ADM/RLE, 2006 WL 1228890 (D. Minn. May 5, 2006) (granting preliminary injunction against internet marketing and web design company, requiring company to timely file forms and pay employment tax liabilities going forward).  In fact, a search of United States Supreme Court, Eleventh Circuit, and Florida district court cases that address § 7402(a) yielded 94 results, not one of which involved a contested case where the court granted injunctive relief under § 7402(a) merely because a business failed to deposit and pay its employment taxes.  All injunctions similar to the one the IRS now seeks that have been granted were entered in cases involving consent orders, defaults, or other failures by the taxpayer to oppose the Government.  The precedential value of such cases is questionable because, in some or all, the judges involved may have given scant consideration to the merits of the Government's request for injunctive relief.

On the other hand Defendants ASKINS are not asserting that § 7402(a) should be expressly limited to scheming tax return preparers.  In *U.S. v. Elsass*, the court acknowledged that § 7402(a)'s application is not limited to "tax return preparers" as defined by the Internal Revenue Code, and granted relief because "§ 7402(a) is undoubtedly designed to prevent individuals from undermining the Nation's tax laws through exploiting loopholes in the I.R.C.'s overall regulatory scheme." 978 F. Supp. 2d 901, 941 (S.D. Ohio 2013).  Further, the Eleventh Circuit has held "[i]t is sufficient under § 7402 for the Government to prove a pattern of gross negligence or recklessness, so long as injunctive relief is 'necessary or appropriate for the enforcement of the internal revenue laws.'" *United States v. Stinson*, 661 Fed.Appx. 945, 952

5

(11th Cir. 2016); *see also United States v. Stinson*, 239 F. Supp. 3d 1299 (M.D. Fla. 2017), *motion for relief from judgment granted*, 119 A.F.T.R.2d 2017-1929 (M.D. Fla. 2017) (citing both *Elsass* and *Stinson* (11th Cir.)); *U.S. v. Grant*, 111 A.F.T.R.2d 2013-1738 (S.D. Fla. 2013) (enjoining defendant engaged in repatriation scheme); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 325 (1999) (injunction available to prevent foreign taxpayers from transferring assets abroad) (citing *U.S. v. First Nat. City Bank*, 379 U.S. 378, 385 (1965)). Use of an injunction is nevertheless neither necessary nor appropriate merely to enforce conventional tax liability, absent some evidence of fraud, scheme, abuse or attempt at evasion.

There has been no allegation that Defendants ASKINS have engaged in an abusive or fraudulent scheme to cunningly undermine or frustrate the IRS, much less a "pattern of gross negligence or recklessness." No allegation has been made, nor could be made, that Defendants ASKINS failed to report or attempted to evade the tax liabilities at issue. With all the collection means at its disposal, the IRS has not demonstrated why its apparent lack of success in fully collecting all the taxes claimed due warrants asking this court for the extraordinary remedy of a preliminary injunction. An injunction under § 7402(a) is simply unnecessary and inappropriate.

**B. The Government is Unlikely to Succeed in Obtaining a Permanent Injunction, Because it Has Adequate Remedies at Law.**

The Supreme Court did famously observe in its 1935 decision in *Bull v. U.S.*, 295 U.S. 247, 259-60 (1935) that "taxes are the lifeblood of government." In that decision, however, it also took note of the "more drastic means of collection" available to the Government—namely, "…if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." 295 U.S. at 259-60. Indeed, the Government has numerous avenues by which it may pursue the collection of unpaid taxes, means considerably more powerful and effective than those available to an ordinary creditor. As chronicled in the

6

Government's own publication, "The IRS Collection Process," the IRS may file a tax lien; seize property; issue a summons to compel the production of information, documents, or testimony; and even cause the Department of State to decline to issue or renew a delinquent taxpayer's passport. Internal Revenue Service, "The IRS Collection Process," Publication 594 *available at* https://www.irs.gov/pub/irs-pdf/p594.pdf (last accessed Sept. 6, 2017).

Under the Internal Revenue Code, after a taxpayer fails to meet the Government's demand to pay taxes, the amount due "*shall* be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; IRC § 6321 (emphasis added). The IRS's lien power extends to all property and rights to property belonging to a taxpayer, including accounts receivable and after-acquired property. *See, e.g., Lapp v. United States,* 316 F. Supp. 386, 388 (S.D. Fla. 1970).

The IRS's statutory power to levy is similarly broad. "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it *shall* be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon *all* property and rights to property…belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. § 6331(a); IRC § 6331(a) (emphasis added). In urgent situations, the statute allows the IRS to skip the 10 day notice period if the collection of the tax is in jeopardy. *Id.* Under § 6331, "[w]henever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made" – as has been alleged by the Government here – "the Secretary may, thereafter, *and as often as may be necessary*, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all

7

expenses, is fully paid." *Id.* at § 6331(c) (emphasis added). The power to levy continues unabated with respect to a taxpayer's salary and wages from the date the levy is first made until it is released. *Id* at § 6331(e).

In the case now at bar, the Government has provided little more than two sentences to bolster its argument that these all-encompassing legal remedies to collect taxes are not sufficient. Revenue Officer Richard Paulsen merely asserts in his Declaration that: "the IRS has consistently filed Notice of Federal Tax Liens, but these have not caused Defendants to become compliant" and "[t]he IRS has issued Notices of Intent to Levy and engaged in levy enforcement actions, but these efforts have not produced sufficient funds to satisfy Askins & Miller's liabilities." Decl. of Richard Paulsen, ECF Doc. 14-1, ¶¶ 8-9. The Internal Revenue Code of course contemplates the possibility that a given levy might not fully satisfy a taxpayer's debt and therefore allows for an unlimited number of repeated attempts. The Government has not alleged how it may have attempted to use the various collection methods to their fullest extent, let alone explained how the numerous legal means of collection afforded it under the Internal Revenue Code are not otherwise sufficient.

"In determining whether the IRS is entitled to an injunction in this case, it will be necessary for the district court to examine the extent to which its interests are protected by available legal remedies." *Ernst & Whinney*, 735 F.2d at 1301, n.11. The legal remedies available here certainly appear quite robust. In this case, the Government has failed to show how and to what extent it has pursued Defendants ASKINS using the many legal remedies it has. No evidence exists that Defendants ASKINS have ever corruptly endeavored or schemed to undermine or disrupt collection by the IRS. All the Government has shown is that the IRS's collective efforts have yet to result in full payment of all the taxes due. The Government has

thus not met its burden to show that its remedies at law are inadequate and consequently that its success on the merits is likely.

### C. The Government Has Not Adequately Shown Irreparable Injury.

The Government argues that it has suffered irreparable injury because Defendants' noncompliance, if not enjoined, may inspire other employers to forgo paying their taxes, as well. Not only is this argument extraordinarily speculative, it is illogical. As discussed above, the Government has multiple legal remedies at its disposal under the Internal Revenue Code. Those remedies include levying upon accounts receivable, personal and real property, bank accounts, and a taxpayer's salary and wages. No evidence has been placed before this Court that the Government has attempted, much less exhausted, all of its many statutory and administrative collection remedies or that Defendants ASKINS have unlawfully evaded or hindered the Government from pursuing such remedies. Beyond its mere conjecture, the Government has not shown how Defendants ASKINS's having unabashedly reported and admitted tax liability, having been subjected to the imposition of liens and levies, and having endured 34 interactions with IRS representatives (27 of which were in person meetings, *see* R. Paulsen Decl. ¶ 6) will somehow inspire or encourage other taxpayers to forego paying their taxes to the IRS. Nor has the Government shown how an injunction might cause others to pay their taxes. Defendants ASKINS have not received some sort of perverse pleasure or benefit as a result of their inability to timely pay all taxes due from their otherwise reputable, albeit financially struggling, medical practice.

The Government's argument that whatever resources it may have spent on collection efforts evidences further irreparable injury also fails. "Irreparable injury" is defined as "[a]n injury that cannot be adequately measured or compensated by money and is therefore often

9

considered remediable by injunction." INJURY, Black's Law Dictionary (10th ed. 2014). As already noted, the Internal Revenue Code enables the IRS to recoup the cost of its collection efforts from the taxpayer through lien and levy—a clear legal remedy for the IRS's purported injury. That injury can be measured and compensated by money, i.e., it is a *reparable injury*. Moreover, the Government has only vaguely asserted, without substantiation, that it "has expended significant resources" and "will be forced to divert finite resources" in the future. This ill-defined allegation fails to shed any light on the amount or degree of the purportedly irreparable so-called injury. No showing whatsoever has been made as to why the collection of these taxes from this taxpayer is urgent, sizeable, unique, or extraordinary so as to warrant the issuance of a preliminary injunction against Defendants ASKINS. Simply put, the Court lacks evidence upon which it might determine if the injury at issue is significant enough even to be "so-called."

### D. The Balance of Hardships Weighs Against the Government.

In suggesting that the balance of hardships weighs in its favor, the Government quaintly argues that an injunction would "simply require[] Defendants to do what they are already legally obligated to do under the internal revenue laws: deposit and pay Askins & Miller's employment taxes." Pl.'s Mot. at 9. This is a telling admission by the Government. The IRS implicitly suggests that it should be able to file suit in this Court and enjoin any taxpayer it chooses so as to require them "to do what they are already legally obligated to do under the internal revenue laws." Giving credence to such a startling assertion could subject this and other district courts to a plethora of injunction suits against virtually any number of financially struggling taxpayers the IRS may choose arbitrarily to target. Any time the IRS encounters some difficulty in its routine collection efforts, then it could march in to court for an injunction.

4820-8971-5791 v1
2936699-000002 09/09/2017

Additionally, the injunction that the IRS has requested against Defendants ASKINS would require much more—including that they not assign property or rights to property; that they refrain from making any disbursements from Askins & Miller's accounts; that they sign and deliver affidavits on a recurring basis; and that Defendants Ronald V. Askins III and Philip H. Askins notify the IRS of any new company or business either may come to own or manage. *Id.* at 2. Any failure of Defendants ASKINS to comply with whatever is mandated or prohibited by the injunction would have to be dealt with through use of this Court's contempt power. That will entail considerable involvement by the Court in what should otherwise be routine collection activity by the IRS outside of court. Defendants ASKINS could then be forced to defend a potential contempt proceeding when they will have done no more than suffered financial distress in their business. This is far more than what is routinely required of even the most recalcitrant taxpayer and would impose an unjustified hardship on the Defendants.

In support of its entitlement to injunctive relief in this case the Government is constrained to rely upon an action, *U.S. v. Sifuentes*, No. SA-05-CA-197-PM, 2005 WL 3627339 (W.D. Tex. Nov. 28, 2005), where the merits were never fully adjudicated on an adversary basis. The defendant was unrepresented. In *Sifuentes*, a magistrate judge granted summary judgment to the IRS and imposed a permanent injunction that required the *pro se* defendant to comply with federal employment and unemployment tax rules. The decision notes that the *pro se* litigant did not attach any support to his brief in response to the IRS's motion. *Id.*

The Government has also cited to *Thibodeau v. U.S.*, 828 F.2d 1499, 1506 (11th Cir. 1987) for its claim that, without the sought after injunction, the United States would be forced to be an unwilling partner in a financially troubled business. *Thibodeau*, however, concerned whether an individual was a "responsible person" with respect to payment of employment taxes

11

for the business in question. *Thibodeau* was not a case about whether an injunction was necessary or appropriate. That decision is therefore simply inapplicable.

Finally, it bears repeating that the Government has failed to define, even generally, the nature or extent of the financial burden that the IRS might suffer if it is limited in collecting taxes from Defendants ASKINS through use of the Internal Revenue Code's full panoply of authorized collection methods. The Government nevertheless claims it is entitled to circumvent those methods with an injunction. Unquestionably, the Government has failed to show that its purported injury should it ultimately fail to collect the taxes at issue will outweigh the injury that the proposed injunction may cause Defendants ASKINS.

### E. The Public Interest Would Not Be Served By Enjoining Defendants.

Despite that fact that the Internal Revenue Code provides adequate legal measures for the collection of all taxes due and for enforcement of the tax laws, the Government nevertheless seeks to selectively use § 7402(a) against taxpayers whose conduct is unremarkable from millions of other taxable entities and individuals. If this Court permits the IRS to do so, the effect will be to circumvent the process provided in the Internal Revenue Code in a fashion that is unjustified and unprecedented. Absent unusual or extraordinary circumstances, simply not present in this case, injunctions have not heretofore and should not now be used as a routine collection tool. This is particularly true when a taxpayer has not been shown to have perpetuated an abusive or fraudulent scheme to exploit IRS loopholes.

The public interest is instead better served by requiring the IRS to properly resort to use the longstanding methods set forth in the Internal Revenue Code and regulations for the recovery of unpaid taxes. These comprehensive collection and enforcement methods are detailed in depth by the IRS's own publications, but those publications omit any discussion of the use of an

injunction in a scenario like this one. The Government's argument that collection of taxes serves the public good, while true, does not justify doing so by the use of unusual, unnecessary, and inappropriate means. The public interest equitable requirement for a preliminary injunction has therefore not been satisfied in this case.

The Government is not necessarily entitled actually to obtain payment of all taxes. It is only entitled to attempt to collect taxes due using one or more of the many lawful means Congress has put at the disposal of the IRS in the Internal Revenue Code. An adequate remedy at law does not always provide assurance that an aggrieved party will actually receive full or partial satisfaction of any judgment obtained. Rather, an adequate remedy at law means the party has the right to proceed in court to obtain that money judgment. Collection may or may not be successful. If the Government is granted the injunction it now seeks, this Court could ultimately become embroiled in a tax collection process that Congress has provided should instead best proceed administratively. If a preliminary injunction may be granted on such scant justification as exists in the case now at bar, then what is to stop the IRS from suing many other taxpayers besides Defendants ASKINS in this and other courts? More injunctions may be sought even though the sums at issue may involve may not be large and the taxpayers in question may not have engaged in any unusual fraudulent or evasive schemes. The potential number of such suits against other delinquent taxpayers would seem to be limitless.

### III. CONCLUSION

The United States has not shown it is entitled to a preliminary injunction under 26 U.S.C. § 7402(a) and the traditional equitable factors. The Government has failed to demonstrate that circumstances exist to make an injunction necessary or appropriate. The United States' Motion for Preliminary Injunction should be DENIED.

4820-8971-5791 v1
2936699-000002 09/09/2017

Dated: September 10, 2017					Respectfully submitted,

**BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
SunTrust Center
200 South Orange Avenue
Post Office Box 1549
Orlando, Florida 32802
Telephone: (407) 422-6600
Facsimile: (407) 841-0325

By: */s/ Donald E. Christopher*
Donald E. Christopher
Florida Bar No. 250831
Michelle F. Zaltsberg
Florida Bar No. 72908
*dchristopher@bakerdonelson.com*
*sdenny@bakerdonelson.com*
*rgustafson@bakerdonelson.com*
*fedcts@bakerdonelson.com*

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 10, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will electronically serve a copy on: Robert S. Silverblatt Esq. *Robert.S.Silverblatt@usdoj.gov*

*/s/ Donald E. Christopher*
Donald E. Christopher

4820-8971-5791 v1
2936699-000002 09/09/2017